ZELE et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 6338.   Decided August 22, 1942.   (128 P. 2d 751.)

See 71 C. J. Workmen's Compensation Acts, sec. 641; 8 Am. Jur., 708.

H. G. Metos, Samuel Bernstein, and Ingebretsen, Ray, Rawlins & Christensen, all of Salt Lake City, for plaintiffs.

Grover A. Giles, Atty. Gen., and H. F. Smart, Deputy Atty. Gen., and A. H. Hougaard, of Salt Lake City, for defendants.

McDONOUGH, Justice.

This is a review of a decision of the Industrial Commission determining that Frank Zele, Sam Mijat, and Henry Haataja were entitled to receive weekly compensation benefits from the United States Fidelity and Guaranty Company, bondsman for the Standard Coal Company, a self-insurer under the workmen's compensation laws of this state.

The sole question for determination is whether under its bond the United States Fidelity and Guaranty Company is liable for the continued payments of compensation benefits to Henry Haataja. No issue is raised as to the liability of the bondsman to Frank Zele and Sam Mijat.

The record shows that pursuant to Section 53(3), Chapter 100, Laws of Utah 1917, now Section 42-1-44(3), R. S. U. 1933, the Standard Coal Company in 1919 became a self-insurer under the Workmen's Compensation Act and deposited with the Industrial Commission a cash bond of $50,000

"to secure payment of compensation liabilities." Subsequently, within a month thereafter, the cash bond, was by permission of the Commission, withdrawn and a personal surety bond in the same amount was filed to secure the payment of "compensation provided" in the act, the furnishing of "medical, nursing and hospital services and medicines," and the performance of "all obligations imposed by said Act."

The bond continued in full force and effect until 1926 when pursuant to order and consent of the Commission the Standard Coal Company filed "in lieu" of the personal surety bond the bond of the United States Fidelity and Guaranty Company in the amount of $20,000, which bond went into effect April 9, 1926, and remained in force until April 1, 1934.

The bond itself is not part of the record transmitted to this court by the Commission but the findings of the Commission state that said corporate surety bond was

"conditioned that the said Standard Coal Company as such self-insurer shall pay the compensation provided in the Workmen's Compensation Act of the State of Utah and furnish the medical, nursing and hospital services, and medicines, and perform all obligations imposed by said Act."

The findings further state that said corporate surety bond was by "order and consent" of the Commission furnished "in lieu of" the personal surety bond theretofore given.

Henry Haataja received an accidental injury in June, 1924, while in the course of his employment with the Standard Coal Company—nearly two years before the corporate surety bond went into effect—but it was not until November, 1930 that a formal order of the Industrial Commission was made directing that certain weekly payments be made to Haataja during his lifetime. It is on the basis that the injury giving rise to the compensation award occurred before the bond was in force that the surety company contends it is not liable for the principal's default. In this connection the statute setting forth requirements as to self-insurers

under the Workmen's Compensation Law is relied on. Section 53, Chapter 100, Laws of Utah 1917, so far as applicable here reads:

"Employers, but not including municipal bodies, shall secure compensation to their employes in one of the following ways: * * *

"(3) By furnishing to the commission satisfactory proof of financial ability to pay direct the compensation in the amount and manner and when due as provided for in this Act. In the latter case the commission may in its discretion require the deposit of acceptable security, indemnity, or bond to secure the payment of compensation liabilities as they are incurred."

It is plaintiff's contention that the surety bond, when read in connection with the above statute, cannot be construed to encompass liability for accidental injury sustained prior to the effective date of the bond. In situations where a bond has been given in compliance with some statutory provision the provisions of the statute are read in connection with the provisions of the bond to determine the nature and extent of the surety's liability. *Home Indemnity Co.* v. *State of Missouri*, 8 Cir., 78 F. 2d 391, 393, where the court held:

"The scope of the surety's obligation under such a statutory bond is prescribed by the statute in compliance with which it is given and by the language employed in the bond defining it." (citing numerous cases.)

But where a bond is by its terms more comprehensive than required by the statute the surety is liable to the full extent of the bond. *Peters* v. *Bechdolt,* 100 Ind. App. 395, 192 N. E. 116 (where the terms of the bond included a greater period of liability than the statute required). See, also, *Fountain Green City* v. *National Surety Corporation,* 100 Utah 160, 111 P. 2d 155.

In the instant case, aside from the statutory provision above quoted, we are of the opinion that the surety bond here involved is liable for the default of the Standard Coal

Company in the payment of weekly benefits to Henry Haataja. The findings of the Commission, which are not disputed, as to both the provisions of the corporate surety bond, and the circumstances under which it was given, compel this conclusion. The provisions of the bond secure the payment of "compensation provided in the Workmen's Compensation Act" and guarantee the performance of "all obligations imposed by said act." No limitation of time is set. Too, the Commission found that the corporate surety bond was given "in lieu of" the personal bond thertofore in force, thus indicating that the corporate bond was to take the place of and become liable for all obligations to which the personal surety bond was liable. That fact, together with the provisions of the bond itself not restricting liability to obligations "hereafter to be imposed," but encompassing "all obligations" imposed, convinces us that the bond of the United States Fidelity and Guaranty Company was intended to cover all obligations under the Workmen's Compensation Act for which the principal was, during the life of the bond, liable—irrespective of whether such obligation or liability arose before or during the life of such bond.

Nor are the provisions of the statute providing for such a bond inconsistent with the view herein taken as to the facts of this case. The language of Section 53 (3) is that a bond may be required to

"secure the payment of *compensation liabilities as they are incurred.*" (Italics added.)

When the liability was "incurred" in the present case need not be determined, since we have concluded that the bond covered liability existing during the life of such bond, regardless of whether it arose prior thereto or not. Certainly a bond which secures the performance of "all obligations" under the act, whether incurred prior thereto or during the life thereof, fulfills the requirements of the statute.

For the reasons stated, the decision of the Industrial Commission is affirmed.

MOFFAT, C. J., and WOLFE, J., concur.

LARSON, J., dissents.

PRATT, J., on leave of absence.