BERTHA MACDONALD *v.* STANDARD ACCIDENT
INSURANCE COMPANY

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 78943

Memorandum filed January 6, 1955.

*Samuel H. Platcow,* of New Haven, and *Francis R. Danaher,* of Meriden, for the plaintiff.

*T. Holmes Bracken,* of New Haven, for the defendant.

SHANNON, J. This is an action against a surety company on two official bonds issued by it as surety —one for the late George C. Rogers, sheriff of New Haven County, and the other for Albert W. Hazzard, as deputy sheriff for New Haven County duly appointed by the late George C. Rogers. In this action the plaintiff seeks to recover from the defendant the amount of a judgment rendered in her favor for the sum of $10,000 in an action she instituted, hereinafter referred to as the former action, against the

estate of the late George C. Rogers and Albert W. Hazzard, No. 75093.

The Rogers bond is conditioned that he shall faithfully discharge the duties of his office as sheriff in all respects according to law. The Hazzard bond is conditioned that he shall well and faithfully perform all of the duties of his position as deputy sheriff as required by law. The Rogers bond was executed before he entered upon his duties as sheriff, pursuant to General Statutes, § 451, which reads as follows: "No person shall enter upon the duties of sheriff until he shall execute a bond of ten thousand dollars, to the acceptance of the governor, payable to the state, conditioned that he will faithfully discharge the duties of his office and answer all damages which any person may sustain by his unfaithfulness, malfeasance, wrong doing, misfeasance or neglect; and the governor may, at any time, demand of any sheriff a new bond, and on neglect or refusal to give it, such sheriff shall be considered to have resigned his office. Each sheriff shall receive a commission and his bond shall be lodged with the secretary and recorded in the records of the state, and a copy thereof, certified by the secretary, shall be evidence of its execution." The bond is in the amount of $10,000; it was accepted by the governor; it is payable to the state and conditioned that Rogers will faithfully discharge the duties of his office. It was lodged with the secretary of state and recorded in the records of the state. The form on which this bond was executed was prepared and printed by the comptroller of the state of Connecticut and not by the defendant.

The Hazzard bond was given to the late George C. Rogers, sheriff of the county of New Haven, Connecticut, before Hazzard entered upon his duties as a deputy sheriff, pursuant to General Statutes, § 458, which reads as follows: "Each deputy sheriff,

before entering upon the duties of his office, shall give to the sheriff a bond in the sum of ten thousand dollars conditioned that he will faithfully discharge the duties of his office and answer all damages which any person may sustain by reason of his unfaithfulness or neglect." The Hazzard bond is in the sum of $10,000 and provides that he would well and faithfully perform all the duties of his position as required by law. This bond was countersigned in behalf of the defendant by Thomas K. Marx, as resident agent, state of Connecticut.

After the execution of these bonds as aforesaid, the late George C. Rogers and Albert W. Hazzard entered upon their duties as sheriff and deputy sheriff respectively and were so acting on May 5, 1949, and thereafter. On May 5, 1949, Hazzard attached the property of the plaintiff on West Main Street, Meriden, and on May 6, 1949, attempted to attach the fixtures and contents of a store owned and operated by the plaintiff at this location. He asked the plaintiff for the keys to the store, which she refused to surrender. He thereupon changed the cylinder in the lock so that it could not be opened by a key any longer. He then left the premises and except for occasional visits to the premises, including one visit with a plumber to fix a frozen pipe, he did nothing further until October 18, 1950, when the attachment was released. No keeper was ever appointed. No effort was ever made to remove the contents of the store to a suitable place for storage. On May 6, 1949, he served a copy of the writ, summons and complaint with his doings thereon upon the plaintiff, which was defective because it did not contain an inventory of the personal property attached as required by law. This is of no consequence in the court's opinion because he subsequently, on May 23, 1949, did serve a proper copy with the inventory included and within the time permitted for

such service. But the attachment was void anyway because he never did have possession of the property as required by law, and this question was litigated in the former action and the defendant has not sustained in this action the burden of proving that the jury in the former action were not justified in finding this attachment was void. I will speak of the defendant's burden of proof further on in this opinion, which will make this point clearer.

On or about February 1, 1951, the plaintiff instituted the former action, No. 75093, against Hazzard and the estate of George C. Rogers to recover damages sustained by her by reason of the neglect, wrongdoing, malfeasance, misfeasance and default of Rogers as sheriff and Hazzard as deputy sheriff, returnable to March, 1951, term of the Superior Court at New Haven. The plaintiff recovered a judgment for $10,000 damages and costs of $82.15 on July 6, 1953. Executions were issued and returned unsatisfied.

On or about October 5, 1953, the instant action was begun. The judgment in the former action is prima facie evidence of the fact of judgment, its amount and the cause of action upon which it is based in an action against the surety upon bonds executed by the defendants in the former action as principals. *Bridgeport* v. *United States Fidelity & Guaranty Co.*, 105 Conn. 11, 26. This is so in cases such as the former action in which the surety was not a party and even where it had no notice. In the former action, the defendant in the instant case knew of the pendency of the former action before trial; it knew the date of trial; it knew of the rendition of the verdict; it employed and paid counsel to argue the motion to set aside the verdict and it participated to that extent. But all of this did not bring it within the rule that makes such judgments conclusive against the surety which is not a party there-

to. *Waterbury* v. *Waterbury Traction Co.,* 74 Conn. 152. The defendant in the instant case may offer any defense it might have offered, had it been a party to the former action, but it has the burden of proving the incorrectness of the judgment in the former action. In the great majority of cases of this character, the surety cannot successfully attack the judgment upon any of the grounds upon which it has been admitted as prima facie evidence, except for fraud or collusion; hence the rule of procedure tends to shorten litigation without depriving litigants of any substantial rights. *Bridgeport* v. *United States Fidelity & Guaranty Co.,* supra. There was no evidence and no claim of fraud or collusion in the instant case. Nevertheless, the court permitted the defendant to offer any and all defenses it claimed to have.

The court has already commented on the defendant's failure to disprove a void attachment. Every opportunity was offered the defendant to disprove the correctness of the amount of damage. However, the jury could have found the plaintiff suffered the loss of rent from May 6, 1949, to October 17, 1950, at $100 per month, totaling $1700, and that the premises were untenantable for three months thereafter because of the condition in which they were left; that the plaintiff suffered a loss of inventory from $2500 to $4000; that substantial repairs were required to the building and that plaintiff's fixtures were substantially damaged, together with interest from October 5, 1951, to June 19, 1953, the date of the verdict in the former action. Consequently the court again cannot say the amount of the verdict, was incorrect.

Further, the defendant contends that neither of the bonds involved are statutory bonds. Neither Rogers nor Hazzard, however, could have entered upon his respective duties without furnishing them.

The very language of the bonds should have informed the defendant of this and, as a company authorized to do business in Connecticut, it should and must have been aware of this statutory requirement, as the reason that both the sheriff and his deputy were furnishing protection in the one instance for the state and in the other for the sheriff himself, at least. Otherwise why do it? The court finds that both bonds were intended to be and are statutory bonds.

The law is well settled that "[t]he liability of a surety on a statutory undertaking is measured by the terms of the statute rather than by the terms set forth in the agreement, where the two are in conflict, as the statute forms a controlling part of every such agreement." Stearns, Law of Suretyship (5th Ed.) p. 14; *Charles City* v. *Rasmussen,* 210 Iowa 841; *Estate of Ramsay* v. *People,* 197 Ill. 572; *State ex rel. County Board of Education* v. *Bateman,* 102 N.C. 52; *State* v. *McGuire,* 46 W. Va. 328. It has been held that where a bond is by its terms more comprehensive than required by statute, the surety is liable to the full extent of the bond. *Peters* v. *Bechdolt,* 100 Ind. App. 395; *Zele* v. *Industrial Commission,* 102 Utah 164. " 'If the law has made the instrument necessary, the parties are deemed to have had the law in contemplation when the contract was executed. . . . The liability of the surety under a statutory bond is measured and defined by the statute; and [the] construction of the statute is a construction of the bond. In such a case, the statute becomes a guide to the surety as to the extent of the obligation assumed.' " *New Britain Lumber Co.* v. *American Surety Co.,* 113 Conn. 1, 6.

An action may be brought in all cases in the name of the real party in interest. Practice Book § 26; Restatement, 1 Contracts §§ 133-145; *Schneider* v. *Ferrigno,* 110 Conn. 86, 89. These bonds were exe-

cuted to cover such a situation in which the plaintiff finds herself and she has the right to maintain this action.

The defendant raises the Statute of Limitations in paragraph 2 of its first special defense, with reference to the Hazzard bond, paragraph 6 of which limits the time in which suit may be brought to "the shortest period of time permitted by law." Both of these bonds are contracts under seal but the Hazzard bond, by its provisions, is governed by § 6085, which reads in part as follows: "No surety company shall limit the time within which any suit shall be brought against it to a period less than three years from the time when the loss insured against shall occur."

The defendant assumes that May 6, 1949, was the date on which the plaintiff's loss occurred and since the instant suit was started on or about October 5, 1953, it says that the statute applies. Statutory provisions exist in all states limiting the time within which an action can be brought upon an official bond, and as in the case of bonds to secure private obligations, the statutes do not usually undertake to define when the cause of action accrues. The courts have experienced some difficulty in fixing a rule as to the time the statute begins to run and there is much diversity of holding in this respect.

The prevailing rule seems to be that the statute begins to run from the time of demand upon the officer for settlement, although a person having a claim against an officer for default will be required to assert his rights by making a demand within a reasonable time and where no demand is made, the law generally presumes a demand after a lapse of time equal to the period of the statutory limitation. *Codman* v. *Rogers,* 10 Pick. (27 Mass.) 112; *Keithler* v. *Foster,* 22 Ohio St. 27; *Thrall* v. *Mead,* 40 Vt. 540.

Some courts have held that the statute begins to run on an official or surety bond from its breach. *McGovern* v. *Rectanus,* 139 Ky. 365; *McKim* v. *Glover,* 161 Mass. 418; *Williams* v. *Flippen,* 68 Miss. 680; *United States Fidelity & Guaranty Co.* v. *Citizens State Bank,* 36 N.D. 16. Other courts have held that the limitation does not run on the bond of a public officer until the term of his office for which such bond has been given has expired, even if the wrongful conversion took place sometime before. *People* v. *Van Ness,* 79 Cal. 84; Stearns, Law of Suretyship (5th Ed.) pp. 349, 350.

Now, in the instant case, the loss insured against occurred on October 17, 1950, when the property of the plaintiff was returned to her by Hazzard in the condition it then was. If this be so, then the instant action was started within the period provided for under § 6085. If it were to be held that the statute did not begin to run until demand was made, then the instituting of the former action on or about February 6, 1951, constitutes such a demand and is within the statutory period. If it were to be held that the limitation did not begin to run until the term for which Hazzard was appointed had expired, then that would be on May 31, 1951, and the instant action would have been started within that period.

It seems to the court, however, that this discussion of the Statute of Limitations with reference to the Hazzard bond is more or less academic, because the defendant not only wrote this bond but also the Rogers bond and there is no such limitation in it. The Statute of Limitations covering the Rogers bond is § 8313, in which the limitation is seventeen years, and indisputably the instant action was brought well within that period. *Bridgeport* v. *United States Fidelity & Guaranty Co.,* 105 Conn. 11, 31.

Judgment in this action is limited by the amount of the bond, which is $10,000. Consequently, costs taxed in the former action cannot be included. The plaintiff is entitled to recover $10,000 damages, plus interest from July 6, 1953, to the date hereof, which amounts to $900.

Judgment may enter for plaintiff to recover $10,900 damages and costs.